**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **OMG, et al.,** § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:13-CV-1404-L |
| § | |
| **HERITAGE AUCTIONS, INC.,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the order of reference dated April 29, 2013, before the court is *Plaintiffs' Motion to Vacate Final Arbitration Award*, filed April 4, 2013 (doc. 1), and *Heritage's Motion to Confirm Arbitration Award and Brief in Support*, filed April 29, 2013 (doc. 15). Based on the relevant filings, evidence, and applicable law, the plaintiffs' motion to vacate the final arbitration award should be **GRANTED,** the defendant's motion to confirm the award should be **DENIED,** the award should be **VACATED,** and the case should be **REMANDED** for further proceedings.

**I. BACKGROUND**

This case presents a challenge to an arbitrator's resolution of a contract dispute. On June 8, 2011, OMG, L.P., John Gallo, and Greg Martin (collectively, OMG)[1] executed two agreements with Heritage Auctions, Inc. (Heritage): an Asset Purchase Agreement (APA) and a Consulting Agreement (CA). In exchange for $150,000, the APA transferred to Heritage all of the "business"[2]

---

[1] OMG, LP is the successor in interest to Greg Martin Auctions (GMA), one of the original contracting parties. (doc. 1 at 1.)

[2] OMG was engaged "in the business of selling firearms and firearm related merchandise on consignment through auction." (doc. 14-1 at 102.)

assets owned by OMG, including all consignment contracts, tangible personal property, mailing lists, and consumer information, as well as "all goodwill associated" with those assets. (Heritage Appx. (doc. 14-1) at 102–03.) Pursuant to the CA, OMG would provide consulting services to Heritage and earn guaranteed commissions based on the sale at auction of "firearms" and "firearm-related merchandise" by Heritage. (*Id.* at 97–99.) OMG's commissions would range between a minimum of $900,000 and a maximum of $4,900,000. (*Id.*)

In February 2012, Heritage filed a demand for arbitration pursuant to the "Dispute Resolution" clauses in the APA and CA, which provided:

> Any dispute or difference between the Parties hereto arising out of or in any way related to this Agreement or the transactions contemplated hereby that the Parties are unable to resolve themselves shall be submitted to and resolved by arbitration administered by the American Arbitration Association (the "AAA") . . . The Parties further agree that disputes as to whether a valid agreement to arbitrate has been made in the first instance and whether certain disputes are subject to arbitration shall be submitted to the arbitrators.

(*Id.* at 88, 113–14 (APA § 7(d); CA § 14(a)).) Heritage sought arbitration to settle three disputes that arose between the parties: (1) whether OMG was entitled to receive commissions on *all* merchandise auctioned by Heritage, or solely on merchandise that OMG "procured"; (2) the meaning of the terms "firearms" and "firearm-related merchandise" for purposes of calculating OMG's commissions; and (3) exactly which auction sales would count toward the $ 4,900,000 commission cap. (OMG Op. Br. (doc. 2 at 8)); (Heritage Resp. Appx. (Sec. Am. Dem. for Arb.) (doc. 17-6) at 6–9.)

In its arbitration demand, Heritage alleged that it "was fraudulently induced" to sign the CA and the APA by OMG, and that OMG breached the CA by failing to use its "reasonable best efforts to procure consignments." (doc. 17-6 at 11.) It requested rescission of the CA and "reasonable damages" for its fraudulent inducement and breach of contract claims. (*Id.*) Alternatively, in "the

event" that the arbitrator found the terms "firearms" and "firearm-related merchandise" to be "ambiguous," Heritage sought rescission of the CA on grounds that there was "never a meeting of the minds" between the parties regarding the meaning of those terms, and therefore, regarding the method for calculating OMG's compensation. (*Id.* at 11–12.) As a third alternative, Heritage requested numerous declarations about the parties' rights and duties. (*Id.* at 12–13.) OMG filed a response denying most of Heritage's allegations. (Heritage Resp. Appx. (Ans. to Sec. Am. Dem. for Arb.) (doc. 17-8) at 2–9.) It also asserted numerous "affirmative defenses" or counterclaims against Heritage, including claims for breach of contract and fraud. (*Id.* at 7–9.)

After a hearing in October 2012, the arbitrator rendered his decision on January 9, 2013. (Heritage Mtn. Appx. (Arb. Award) (doc. 15-1).) The arbitrator denied the parties' fraud claims, explaining that "there [was] no direct evidence of fraudulent intent on either side." (*Id.* at 10.) He also denied their breach of contract claims. (*Id.*) He next determined that the APA and the CA "should be considered one integrated transaction" rather than two separate contracts. (*Id.* at 11.) Finding that the terms "procurement," "firearms," and "fire-arm related merchandise" were "ambiguous," the arbitrator considered the parties' proffered extrinsic evidence to determine their intended meaning. (*Id.* at 11–14.) Based on the evidence, the arbitrator concluded that there was "no meeting of the minds" between the parties regarding the meaning of these terms, and the APA and CA therefore "never came into existence as enforceable obligations on either side." (*Id.* at 15.) Regarding their breach of contract claim, he found that it was "immaterial whether either side failed to perform in any respect, because there was [*sic*] never any obligations to perform." (*Id.*) Because "both agreements were at least partially performed," however, he stated that rescission "in the strictest sense" was impossible given that the parties could not be restored "to the positions they occupied immediately before the closing on the transaction." (*Id.*) Accordingly, he "canceled" both

agreements, leaving the parties "in the positions they [then] occup[ied]." (*Id.* at 9, 15.)

On April 8, 2013, OMG moved to vacate the arbitration award. (doc. 1.) Shortly after that, Heritage filed a cross-motion to confirm the award. (doc. 15.) With timely-filed responses and replies, the motions are now ripe for recommendation.

## II. MOTION TO VACATE ARBITRATION AWARD

### A. Legal Standard

The Federal Arbitration Act (FAA) provides that when a party to an arbitration timely applies for an order confirming an award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C.A. § 9 (West 2009). A court may vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption among the arbitrators; (3) the arbitrators were "guilty of any [] misbehavior" that prejudiced a party's rights; or (4) the arbitrators exceeded their powers. *Id.* § 10(a)(1)–(4). Under § 11, a court may modify or correct an award when "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." *Id.* § 11(b). Judicial review of an arbitration award is "extraordinarily narrow" since courts are generally required to defer to the arbitrator's decision. *Glover v. IBP, Inc.*, 334 F.3d 471, 473–74 (5th Cir. 2003).

### B. Exceeding Authority

OMG moves to vacate the award under 9 U.S.C. § 10(a)(4), contending that the arbitrator exceeded his authority by canceling the APA and the CA on grounds that they never came into existence because there was no "meeting of the minds" between the parties. (doc. 2 at 14–18.) While it concedes that determining a contract's *validity* is within the bounds of an arbitrator's powers, it argues that determining a contract's *existence* is a threshold issue to arbitration that only

a court can decide. (*Id.*)[3]

"Arbitration is strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847, 2856 (2010) (internal quotations omitted). In essence, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648–49 (1986); *accord Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 405 (5th Cir. 2007) (explaining that because "[a]rbitration is a matter of contract," the "powers of an arbitrator are dependent on the provisions under which [he] was appointed") (internal quotations omitted), *overruled on other grounds by Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). The Fifth Circuit has held that arbitrators exceed their authority when they "intrude[] on an issue that [is] reserved for an alternative decisionmaker or [is] removed from anyone's discretion under the contract." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 805 (5th Cir. 2013) (citing *Apache Bohai*, 480 F.3d at 403–04).

The Supreme Court has identified three types of arbitration disputes that implicate an arbitrator's authority to decide cases: (1) challenges to the continued validity[4] of a contract containing an arbitration clause; (2) challenges to the formation or existence of a contract containing

---

[3] OMG also lists and briefs five additional grounds for vacating the arbitration award. These are not considered because the contract formation issue provides sufficient basis for vacatur.

[4] Grounds for invalidating or voiding a contract after its formation include claims for fraudulent inducement, duress, unconscionability, illegality, and mutual mistake. *See Buckeye*, 546 U.S. at 444; *Timegate Studios*, 713 F.3d at 805; *RDP Technologies, Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 139 (D.D.C. 2011). A case from the Seventh Circuit explains the difference between a claim that a contract is legally invalid or void (such as a fraudulent inducement claim) and a claim that no contract was ever formed:
> A claim of fraud in the inducement—which boils down to "we wouldn't have signed this contract had we known the full truth about . . . "—supposes that the unhappy party did agree, but now wishes it hadn't . . . [W]hether there was *any* agreement is a distinct question . . . [it] is not a defense to enforcement, . . . it is a situation in which no contract came into being.

*Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590–91 (7th Cir. 2001) (emphasis in original).

such a clause; and (3) challenges to the validity of the clause itself (i.e., the "arbitration agreement"). *See Granite Rock*, 130 S. Ct. at 2857–59; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).[5] In *Buckeye*, the Court considered "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." *Id.* at 442. The Court reaffirmed its prior holding that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator," not the courts. *Buckeye*, 546 U.S. at 445–46 (citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403–04 (1967)). Because the existence of the parties' lending agreement was not at issue, the Court acknowledged but declined to resolve the question of whether an arbitrator should determine challenges to contract formation. *See id.* at 444 n.1.

Subsequently, in *Granite Rock*, the Court expressly adopted the "well settled" principle that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 130 S. Ct. 2855–56. The resolution of the case turned in part on whether a labor contract was "ratified and thereby formed" on a certain date. *Id.* at 2856. The Court held that "absent a valid provision *specifically committing*" issues of contract formation and applicability to an arbitrator, a court must resolve those issues. *Id.* at 2858 (emphasis added).[6] Finding that there was no such provision in the contract, the Court remanded the case for "the judicial resolution . . .

---

[5] Although these cases were decided in the context of motions to compel arbitration, they apply to the instant case because they determine issues that impact arbitrators' authority.

[6] Prior to *Granite Rock*, the Fifth Circuit had explained the rationale for distinguishing between contract validity and contract formation disputes:
> That one of the parties later disputes the enforceability of th[e] *agreement* does not change the fact that at some point in time, the parties reached an agreement, . . . The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist. . . In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue . . . .

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218–19 (5th Cir. 2003) (emphasis in original).

of when the [contract] was formed." *Id.* at 2860. Although the Court did not state what the result would have been had the contract "specifically committed" contract-formation questions to the arbitrator, it reaffirmed existing precedent that "except where the parties *clearly and unmistakably* provide otherwise,[7] . . . it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Id.* at 2858 (internal quotations omitted) (emphasis added).

Here, Heritage sought to rescind the CA arguing that in the event that the arbitrator found the terms "firearms" and "fire-arm related merchandise" to be ambiguous, he should issue a finding that there was no "meeting of the minds" between the parties about the meaning of those terms. (doc. 17-6 at 11–12.) With these arguments, Heritage put the very existence of the CA in dispute, since a "meeting of the minds" is an essential element for the formation of a contract in Texas.[8]

Although the CA and the APA[9] each contain a broad arbitration clause, the question about the agreements' formation was beyond the clause's scope, since no dispute could "arise from" or "relate to" an agreement that never existed. *See Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 105 (4th Cir. 2012) ("[W]here a contract commits to arbitration those matters 'arising under' the agreement, [courts] may *not* submit questions of contract formation

---

[7] For example, the Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2777 (2010) (citation omitted). Such a "delegation provision" must be clear and specific, however. *See id.*; *see also Granite Rock*, 130 S. Ct. 2858; *Allen v. Regions Bank*, 389 F. App'x 441, 444 (5th Cir. 2010) ("[T]he issue of arbitrability is for an arbitrator when the evidence *clearly demonstrates* that was the parties' agreement.") (citing to *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)).

[8] Under Texas law, the elements of contract formation are: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; 4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011) (citing *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.— Tyler 2004, pet. denied)).

[9] As noted, the arbitrator treated the CA and the APA as one "integrated" agreement. (doc. 15-1 at 11.)

to the arbitrator, as those questions cannot 'arise under' an agreement that was never []formed.") (citing *Granite Rock*, 130 S. Ct. at 2860–61) (emphasis in *Peabody*); *see also Regions Bank*, 389 Fed. App'x at 444 (distinguishing the conclusion that a contract does not exist from the conslusion that an arbitration clause contained in an existing contract does not cover or "reach" a certain matter); (*see also* doc. 14-1 at 88, 113–14 (APA § 7(d); CA § 14(a)).) Moreover, the delegation provision found within the arbitration clause expressly delegates to the arbitrator the authority to decide arbitrability (i.e., the parties' agreement to arbitrate in the first instance), but neither this provision nor the arbitration clause as a whole "specifically" or "clearly and unmistakably" delegate to the arbitrator the power to determine questions of contract formation. (*See* doc. 14-1 at 88, 113–14 (APA § 7(d); CA § 14(a)).)

Lastly, even the broad language in the arbitration clause providing that the parties agreed to arbitrate "[a]ny dispute or difference . . . arising out of or in any way relating to . . . the transactions contemplated in the [CA and APA]" is also not dispositive. The "strong presumption" favoring arbitration applied to construe "ambiguous" arbitration clauses does not arise until the preliminary question of whether there was a valid arbitration agreement is met. *See Granite Rock*, 130 S. Ct. at 2859–60 ("We have applied the presumption favoring arbitration, . . . only where . . . [the parties'] express agreement to arbitrate was validly formed . . . .") (citations omitted); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) ("The federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.") (internal quotations omitted). Here, the arbitrator's findings that the CA and the APA never came into existence because there was no meeting of the minds between Heritage and OMG, and that there were never any obligations to perform (doc. 15-1 at 15), necessarily implied that the arbitration clauses contained in those agreements never existed either and were not binding obligations. Absent

clear and unmistakable evidence of the parties' intent to the contrary, only a court could break this illogical circularity. *See Sphere Drake*, 256 F.3d at 591 ("[A]s arbitration depends on a valid contract[,] an argument that the contract does not exist can't [*sic*] logically be resolved by the arbitrator. . . ."); *see also Granite Rock*, 130 S. Ct. 2858.

In conclusion, a court was the proper decision-maker as to contract formation issues in this case, not the arbitrator. *See Granite Rock*, 130 S. Ct. 2858; *Will-Drill*, 352 F.3d at 218–19. By finding that the APA and the CA "never came into existence," the arbitrator intruded on an issue that was reserved for an alternative decision-maker and thereby exceeded his authority. Vacatur of the arbitration award and remand to the AAA are therefore warranted. *See Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 604 (5th Cir. 1989) (affirming vacatur of arbitration award where the arbitrator exceeded his authority by deciding an issue that was reserved for one of the parties' discretion); *Cooper Natural Res., Inc. v. Int'l Union of Operating Engineers, Local 351*, No. 4:97-CV-669-A, 1998 WL 25547, at *3 (N.D. Tex. Jan. 12, 1998), *aff'd*, 163 F.3d 916 (5th Cir. 1999) (vacating arbitration award where the arbitrator set aside one of the parties' agreements despite lacking the authority to do so).[10]

### III. MOTION TO CONFIRM ARBITRATION AWARD

Heritage moves to confirm the arbitration award. (doc. 15 at 2–4.) As discussed, under the FAA, a court must grant a motion for an order confirming an arbitration award, *unless* the award is

---

[10] In its "prayer" for relief, in addition to vacatur and remand, OMG requests a finding that the APA and the CA are a "valid and binding contract between the parties," or in the alternative, asks the Court to "reserve to its own jurisdiction a determination of that issue." (docs. 1 at 5; 2 at 31.) "Court[s] 'apply ordinary state-law principles that govern the formation of contracts' to determine whether the parties ever formed a binding contract containing an arbitration provision." *RDP Technologies*, 800 F. Supp. 2d at 140 (citing *First Options*, 514 U.S. at 944); *accord Will-Drill Res.*, 352 F.3d at 218. Because OMG did not brief the issue of whether the APA and the CA became a valid and binding contract under Texas law, it provided no basis for this requested relief. *See Tyler*, 812 F. Supp. 2d at 787 (listing the elements of a valid contract in Texas). Accordingly, this request should be denied.

vacated, modified, or corrected. *See* 9 U.S.C. § 9–11. Since vacatur of the arbitration award has been recommended under §10(a)(4), Heritage's motion to confirm the award should be denied.

## IV. RECOMMENDATION

OMG's motion to vacate the final arbitration award should be **GRANTED,** Heritage's motion to confirm the award should be **DENIED,** the award should be **VACATED,** and the case should be **REMANDED** to the AAA for further proceedings. OMG's request for miscellaneous relief should be **DENIED.**

**SO RECOMMENDED** on this 22nd day of January, 2014.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE